**FILED**

Wo Of Ideafarm
211 Hope Street, #276
Mountain View, CA 94042
tel: none
email: ideafarm.delayed.publication@gmail.com

Plaintiff, pro se

MAY 3 1 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Ideafarm, Wo Of

    Plaintiff

v.

Jeff Rosen in his official capacity as
District Attorney, an elected officer of
Santa Clara County, and Xavier
Becerra, in his official capacity as
Attorney General of the State of
California

    Defendants

**CV 18 3253 NC**

Complaint
DEMAND FOR JURY TRIAL

---

1a. **Filing Authority:** *Fed. Rules of Civil Proc. 3.*
1b. **Jurisdiction:** *28 U.S.C. 2283, Young (1908)[1], Younger (1971)[2].*
1c. **Venue:** Five prosecutions (10 counts) are pending at Superior Court within this district.[3]
1d. **Assignment:** San Jose Division. (Superior Court, Dept. 84, Palo Alto Courthouse.)
1e. **Relief Sought:** Injunctive, declarative, habeas corpus, immediate emergency stay.


This complaint is being hurriedly filed today because I expect to be jailed tomorrow morning
for contempt for ignoring a gag order. Being jailed tomorrow will prevent me from participating
actively in my defense and was intended to prevent me from filing the instant complaint. I am
exhausted and filled with fear for my life as well as for my liberty.


1 *ex parte Young, 209 US 123 - Supreme Court 1908.*
2 *Younger v. Harris, 401 US 37 - Supreme Court 1971.*
3 Cases B1579697 , B1579789 , B1689743 , B1689750 , B1582698.

## Procedural Context

As criminal misdemeanor defendant in Superior Court, I demurred to all counts on the ground that all ten counts of the five criminal complaints fail to state facts that would, if true, constitute a public offense *(Penal Code 1004(4))*.  The Court ordered me to stop sending emails to the prosecuting deputy district attorney, some of which were cc'd to District Attorney Jeff Rosen.  I ignored the order and continued to send emails.  Two thirds of those emails provided exculpatory evidence.  One third of the emails were of a "notice of violation" character, designed to prevent District Attorney Rosen from later claiming that he was not aware that his subordinates were maintaining prosecutions not warranted by law, not supported by evidence, and for an improper purpose.  The emails were without exception respectful and truthful and of minimal length and number to accomplish their purpose.  On May 25, 2018, Judge Nadler refused to vacate the gag order and gave me a warning, and also summarily overruled all demurrer attacks as meritless after refusing to hear oral argument, and then refused to give any explanation for his ruling.  On May 28, 2018, I served a "Statement of Disqualification" by mail on the prosecuting attorney and I plan to personally serve Judge Nadler tomorrow.  Tomorrow's hearing is a contempt hearing in which the Court will almost certainly jail me; the prosecuting attorney is also going to ask for a written gag order, which will if granted make it a misdemeanor for me to send an email.

## Attachments

I am incapable, due to exhaustion and fear and lack of time, of writing a proper complaint today, so I am attaching the following as an integral part of this complaint: (1) The Demurrers, (2) The transcript of the imposition of the gag order, (3) The

Statement of Disqualification.   (4) A draft of the proposed written gag order.  I declare under penalty of perjury that the factual statements made in these attachments are true and correct and are presented here to substantiate the following complaints.  The purpose of the attachments is to substantiate all statements of fact contained herein, as well as to state additional facts, with all facts stated, both here and in the attachments, to be integral to this complaint.

## Complaint – Summary

I speak civic messages with signs while standing on the roadway in Mountain View.  I obey all Vehicle Code and other laws.  But during 2015-2016, particularly during the presidential election, when I spoke, I repeatedly caught public nuisance charges.  The currently pending prosecutions against me are, with one exception (one count out of ten), public nuisance prosecutions for speaking with a sign on the roadway.  These prosecutions make clear that the price that I must pay to speak for four hours with my sign is that I will catch a new public nuisance charge and have to spend years in court in a hopeless and fundamentally unfair fight that will inevitably result in months of jail time, all because some jury of people who hate my speech are given an opportunity to decide that my message or my method interferes unreasonably with a public right and is hence a punishable offense.  There is no way for me to avoid this jeopardy other than by abandoning my desire to speak.  And the prosecutions that are already pending against me are fundamentally unfair, with a current judge that has made a dozen or more rulings that constitute a pattern that establishes beyond reasonable doubt that he is willfully and maliciously refusing to follow binding State law as well as binding Federal constitutional provisions.  The current judge has also made a statement on the record that is tantamount to an admission of actual bias against my

interests.  Without federal relief, I will not be able to speak during the upcoming election period, I will suffer a fundamentally unfair series of five prosecutions with the jeopardy of years of imprisonment, and I will never again dare to speak.

## Complaint - Narrative

Beginning in 2015 and continuing through the November, 2016 election period, I accumulated the ten charges comprising the five criminal complaints.  With one exception, all counts of all charges arise from me standing on a roadway and speaking civic and political messages with a sign.  All of the counts, without exception, arise from speech content or from acts inseparable from speech method.  Two counts allege "molestation by obstruction" *(Penal Code 647c)*.  Two counts allege "delaying an officer" *(Penal Code 148)*. Six counts allege "public nuisance" *(Penal Code 370/372)*. With one exception, all counts arise from incidents in which police contacted me while I was speaking with my sign and interfered on the ground that my speech or speech method was a public nuisance.  The one exception arose from an incident in which police officers were detaining an acquaintance of mine and I approached to advise that detainee.  My audio recording of the incident establishes that I was advising the detainee to cooperate with the police.  The police report establishes that the detention was unlawful, being made on the authority of a statute that had no application to the facts stated in the police report, so that even if I had been interfering with the police action, those police officers were not performing any lawful duty.

Some of the State complaints are at their fourth amendment.  Until very recently, all complaints incorporated police reports by reference.  None of the counts state facts that, if true, would constitute a public offense.  For example, one count alleges that I

was "walking through traffic". To defeat incorporation by reference of police reports, I demanded formal arraignment, including full reading of the complaints (including any documents incorporated by reference). I also demanded that I be handed a copy of each complaint in the presence of the Court. Judge Kulkarni refused to read the police reports into the record during reading of the complaints. He also refused to cause the complaints to be handed to me in the Court's presence, instead ordering defense counsel to provide me with a copy. The requirements of State law regarding formal arraingment were never met. Worse, the Court's official electronic recording of the arraignment proceedings is false; it does not contain the remarkable arraignment in which my attorney and I both clearly remember me demanding that the police reports be read into the record, with Judge Kulkarni refusing. The record that does exist establishes that Judge Kulkarni ruled unreasonably and contrary to law. A Statement of Disqualification was filed, primarily to obtain subpoena power so that my attorney could force Court Services to provide "hash values" and other evidence so that we could prove that the official electronic recordings had been altered intentionally rather than merely due to equipment malfunction. Court Services failed to respond to reasonable requests for "hash values", my attorney failed to investigate the falsification of the record, and the motion to disqualify became moot with the transfer of Judge Kulkarni to another courthouse.


The general character of these prosecutions is that the prosecuting attorneys have vigorously resisted defense demurrers to eliminate the incorporation by reference of police reports and to force the prosecutor to state facts that, if true, would constitute a public offense. The current amended complaints no longer incorporate documents by reference, except for the one complaint involving me advising a detainee. I want that complaint to incorporate the police report, because the facts stated in that police report conclusively establish that I did NOT commit the charged offense.

However, prosecution continues to refuse to state facts that constitute a public offense. The nine counts arising from the public nuisance incidents (speaking with a sign, standing on a roadway) state the following facts:

1.  Willfully and maliciously obstructed free movement.

2.  Held a sign that obstructed motorists' view.

3.  Walking through traffic.

4.  Standing in the roadway distracting motorists.

5.  Willfully and maliciously obstructed free movement.

6.  Standing in the intersection obstructing motorists' views.

7.  Willfully resist, delay, and obstruct a lawful duty.

8.  Standing in the intersection obstructing and distracting.

9.  Standing in the intersection obstructing and distracting.

All of these counts arise from the same facts, differing only by date.  By alleging facts that might or might not constitute an offense, the prosecuting attorneys are attempting to use criminal court to impose prior restraint and impermissible discretion upon my speech activities.  I scrupulously obey all traffic and other applicable laws, which operate as time, place, manner regulations.  But there is no way for me to know what I need to do in order to avoid jeopardy of prosecutions under the public nuisance statute as I speak with my sign.  The implication of my demurrers being overruled is that I must first speak, suffering the risk of being arrested and imprisoned and prosecuted for "obstructing motorists' views", and then suffer a criminal trial in which a jury is presented evidence of facts not stated in the complaint and then asked whether the

jury finds that those facts constitute a public offense.  Worse, the jury is drawn from a population that is largely hostile to my "political right" minority speech content.  It is not fair to let my hostile audience decide whether my message and method constitute a crime.  Yet that is exactly what lies ahead in the current prosecutions against me, and I will be unable to even defend myself by providing evidence to my attorney, since I am likely to be kept in jail on contempt charges.

So, instead of speaking my political messages during the upcoming election period, and then speaking my anti-consumerism and anti-materialism messages during the Christmas shopping madness period, I will be fighting these charges and likely in jail. And I sure as hell won't be doing any more speaking with signs.

(Sorry for the incoherence; I'm starting to panic because my mind is mush and I need to get this filed.  Please get me out of jail and give me an emergency temporary stay so that I have time to get some sleep and then file a properly concise and legally sufficient amendment to this complaint.)

## Prayer

I respectfully pray for **immediate habeas corpus relief** to determine whether I am jailed or imprisoned or otherwise being prevented from effectively participating in my defense at Superior Court, such as by an unconstitutional gag order.

I respectfully pray for declarative relief on the following questions:

1. Can speech content, or an act inseparable from <u>speech content</u>, be prosecuted under Californa's criminal public nuisance statute, *Penal Code 370/372*, without such prosecution per se constituting a First Amendment impermissible imposition of a **prior restraint**, as well as per se imposing First Amendment **impermissible discretion?**

2. Can an act that is inseparable from <u>speech method</u> be prosecuted under *Penal Code 370/372*, without such prosecution per se constituting an impermissible **prior restraint** and imposing **impermissible discretion?**

3. Can Superior Court impose a <u>speech prior restraint</u> on a criminal defendant by **ordering him to stop contacting (by email) the prosecuting attorney**, without per se violating his rights under the *First Amendment* as well as *Due Process?*

I respectfully pray for injunctive relief to force the termination of the pending prosecutions listed above, including an immediate stay of all proceedings, including gag orders, contempt, and the imposition of punishment for contempt.

Signed,

Wo Of Ideafarm

EXHIBIT #1

1  Wo Of Ideafarm
2  211 Hope Street, #276
3  Mountain View, CA 94042
4  phone: none
5  email: ideafarmcity@gmail.com

6  Defendant, represented by
7  Babach (Bobby) Lau, SBN #257955

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

| 9  People | | B1579697 , B1579789 |
|---|---|---|
| 10 | Plaintiff | B1689743 , B1689750 |
| 11 v. | | Demurrer to Four Complaints Filed January 26, 2018 |
| 12 Ideafarm, Wo Of | | |
| 13 | Defendant | February 2, 2018 @ 1:30 PM Hon. Jerome S. Nadler, Dept. 84 |

14  **Filing Authority: *Penal Code 1005.***      **Primary Authority: *Penal Code 1004 (4).***

15  "A demurrer admits all material and issuable facts properly pleaded. [refs]
16  However, it does not admit contentions, deductions or conclusions of fact or law
17  alleged therein." *(Daar (1967)[1])*

18  "But in all cases it must clearly appear that, **if the facts alleged are true, the**
19  **defendant is guilty of a crime**. [refs]... "In no case can the indictment be aided
20  by imagination or presumption. The presumptions are all in favor of innocence,
21  and, if the facts stated may or may not constitute a crime, the presumption is that
22  no crime is charged."" *(Carroll (1905)[2])* quoting *Terrill (1899)[3])*

1 *Daar v. Yellow Cab Co., 433 P. 2d 732 - Cal: Supreme Court 1967.*
2 *People v. Carroll, 1 Cal.App. 2, 81 P. 680 (1905).*
3 *People v. Terrill, 127 Cal. 99, 59 Pac. 836 – Cal: Supreme Court 1899.*

1   Defendant respectfully demurs generally to all counts of all complaints on the ground of

2   insufficiency *(Penal Code 1004 (4))*:

| Count | Offense | Facts | Reason |
|-------|---------|-------|--------|
| 697-1 | *PC 647c* | willfully and maliciously obstructed free movement | W P C |
| 697-2 | *PC 372* | held a sign that obstructed motorists' view | I U S E P D R |
| 697-3 | *PC 372* | walking through traffic | I U S E P D R |
| 697-4 | *PC 372* | standing in the roadway distracting motorists | I U S E P D R C |
| 789-1 | *PC 647c* | willfully and maliciously obstructed free movement | W P C |
| 789-2 | *PC 372* | standing in the intersection obstructing motorists' view | I U S E P D R |
| 789-3 | *PC 148* | willfully resist, delay, and obstruct a lawful duty | W E C |
| 743-1 | *PC 372* | standing in the intersection obstructing and distracting | I U S E P D R C |
| 750-1 | *PC 372* | standing in the intersection obstructing and distracting | I U S E P D R C |

| OBJECTIONS | |
|---|---|
| | |
| I | Facts must establish **intent** by proof or presumption. |
| W | Facts must establish **willfulness** and **malice** by proof or presumption. |
| U | Facts must establish an <u>**unreasonable**</u> interference with a public right. |
| | |
| S | Facts must fall within the **statutory definition** of public nuisance. |
| E | Facts must preclude the "not punished elsewhere" **statutory exemption**. |
| | |
| P | Regulation of the act must not be **preempted** by the *Vehicle Code*. |
| D | The act must be separable from speech method (**impermissible discretion**). |
| R | The act must be separable from speech method (**prior restraint**). |
| C | The act must be separable from speech content (**protected speech**). |
| | |

1   In these cases, the Court is asked to decide the scope of a police officer's power to
2   impose order on the use of a street and, in particular, on such use by a speaker.  (1)
3   Can a police officer say to a speaker, **"The *Vehicle Code* allows you to speak that**
4   **way, but I won't allow it.  <u>In my opinion, your speech method is unreasonable</u>."**
5   (2) Can a police officer say to a pedestrian, bicyclist, or motorist, **"The *Vehicle Code***
6   **allows you to use the street that way, but I won't allow it.  <u>In my opinion, you are</u>**
7   **<u>using the street unreasonably</u>."**


8   For acts that are entirely within the regulatory field that is fully occupied by the *Vehicle*
9   *Code*, such as acts involving pedestrian position and movement on a sidewalk or
10   roadway, the Legislature intends order to be imposed exclusively by the *Rules of the*
11   *Road Division* of the *Vehicle Code*, which imposes a system of rights and duties.  All
12   balancing to determine the reasonableness of a particular act has been done by the
13   Legislature; all that remains for the police officer is to enforce the rules.  Except where
14   explicitly provided for, **police officers are not arbiters of what is reasonable** for
15   motorists, bicyclists, or pedestrians to do.  *(Pipoly (1942)[4] Lane (1962)[5] Murphy*
16   *(2011)[6])*


17   Similarly, the *First Amendment* does not permit police officers to be arbiters of which
18   speech methods are reasonable  *(Forsyth (1992)[7] Lakewood (1988)[8] Citizens (2010)[9]*)
19   or whether particular speech content is to be permitted.  *(Busch (1976)[10])*

4  *Pipoly v. Benson, 20 Cal. 2d 366 - Cal: Supreme Court 1942.*
5  *In re Lane, 58 Cal. 2d 99 - Cal: Supreme Court 1962.*
6  *People v. Murphy, 253 P. 3d 1216 - Cal: Supreme Court 2011.*
7  *Forsyth County v. Nationalist Movement, 505 US 123 - Supreme Court 1992.*
8  *City of Lakewood v. Plain Dealer Publishing Co., 486 US 750 - Supreme Court 1988.*
9  *Citizens United v. Federal Election Com'n, 130 S. Ct. 876 - Supreme Court 2010.*

1 Preemption, impermissible discretion, and prior restraint are all "black letter law".  The

2 City of Mountain View and District Attorney Jeff Rosen know this law perfectly well.

3 This proceeding is a willful and malicious abuse of the Court's process to silence and

4 harass a speaker and to suppress a powerful method of speech, in violation of *Code of*

5 *Civil Procedure 128.7 (b)* and *Penal Code 1447*.

6 Defendant reserves any and all federal claims made herein pursuant to *England*

7 *(1964)*[11]  Defendant reserves the right to immediately raise the same federal claims in a

8 federal action, notwithstanding whether, how, or when State court decides such

9 questions.

10 Defendant demurs specially to all complaints for not being properly *certified.  (Code of*

11 *Civil Procedure 128.7 (a))*.

12 Defendant demurs specially to Count 1 which is uncertain regarding whether it alleges

13 a violation of *Penal Code 647(c)* or *Penal Code 647c.  (Lim (1941)*[12])

---

10 *People ex rel. Busch v. Projection Room Theater, 550 P. 2d 600 - Cal: Supreme Court 1976.*

11 *England v. Louisiana Bd. of Medical Examiners, 375 US 411 - Supreme Court 1964.*

12 *People v. Lim, 18 Cal. 2d 872 - Cal: Supreme Court 1941.*

| AUTHORITIES | |
|---|---|
| | **CERTIFICATION:** *CCP 128.7 (a)* |
| | **SUFFICIENCY:** *PC 1004 (4) PC 1019 Daar (1967) Carroll (1905) Terrill (1899)* |
| | |
| **I** | *Penal Code 20 Hood (1969)[13]* |
| **W** | *PC 7 (1) PC 7 (4)* |
| **U** | *Pain (1968) Gallo (1997)* |
| | |
| **S** | *PC 370 PC 372* |
| **E** | *PC 372 PC 148 Vehicle Code 21957* |
| | |
| **P** | *Pipoly (1942) Lane (1962) Murphy (2011) VC 21950 VC 525* |
| **D** | *Forsyth (1992) Lakewood (1988) Citizens (2010)* |
| **R** | *Citizens (2010)* |
| **C** | *Quiroga (1993)[14] Busch (1976)* |

1   **Leave to amend should be granted.**  The People will not be able to state sufficient

2   facts for any count.  This will reveal to the Court that the People are maliciously

3   abusing the Court's process to harass and silence a speaker, in violation of *Code of*

4   *Civil Procedure 128.7 (b)* and *Penal Code 1447.*

13*People v. Hood, 462 P. 2d 370 - Cal: Supreme Court 1969.*
14*People v. Quiroga, 16 Cal. App. 4th 961 - Cal: Court of Appeal, 1st Appellate Dist., 1st Div. 1993.*

## 1   Penal Code 370/372 only reaches UNREASONABLE acts.

2   "Of course, not every interference with collective social interests constitutes a
3   public nuisance. To qualify,... the interference must be... **unreasonable**. ... The
4   unreasonableness... represents a judgment reached by comparing the social
5   utility of an activity against the gravity of the harm it inflicts, taking into account a
6   handful of relevant factors." *(Gallo (1997)[15])*

7   "... [T]he element of unreasonableness commonly applies to criminal public
8   nuisances,... requires only that the "utility... is outweighed by the gravity of the
9   interference with the public right."" *(McDonald (2006)[16])*

10   "[S]ection 370's... obstruction... has long been construed... as limited to
11   unreasonable obstructions. [refs] We... direct that... the court below treat the
12   word "unreasonable" as included in the statute preceding the word "obstruction."
13   *(Pain (1968)[17])*

14   All public nuisance counts fail to state facts establishing an act that interfered with a

15   public right **unreasonably**. Merely stating that would be a conclusion of law and hence

16   not admitted on demurrer. The counts would need to allege facts so that the Court can

17   perform the balancing judgment discussed in *Gallo (1997)* and *McDonald (2006)*, so

18   that the Court can decide whether the facts stated, if true, would constitute an

19   **unreasonable** interference with a public right, and hence a public offense.

## 20   Obstruction of "free passage or use, in the customary manner" is
## 21       not alleged.

15 *People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090 - Cal: Supreme Court 1997.*
16 *People v. McDonald, 40 Cal. Rptr. 3d 422 - Cal: Court of Appeal, 1st Appellate Dist.,*
    *2nd Div. 2006.*
17 *Pain v. Municipal Court, 268 Cal. App. 2d 151 - Cal: Court of Appeal 1968.*

1  Obstructing the view of motorists does not necessarily result in obstructing their "free
2  passage or use, in the customary manner, of a street.  Even if facts were alleged that
3  established an unreasonable interference with the view of motorists, that does not,
4  without more, fall within the statutory definition of the offense.  Drivers routinely deal
5  with many objects that obstruct their view of some part of the street, the sky, abutting
6  buildings, and other objects that they might want to see.  Every vehicle that passes
7  through an intersection momentarily obstructs the view of many motorists who, for a
8  moment, cannot see another car, or a pedestrian crossing in a crosswalk, or a retailer's
9  marquee sign hanging over a sidewalk.  Drivers are required to adapt their speed and
10  vigilance to such changing conditions; such adaptability is an important part of "the
11  customary manner" with which motorists are required to use the streets.

12  **Some public nuisance counts fail to state Defendant's position**
13  **relative to the street.**

14  Was Defendant standing on a roadway, standing on a sidewalk, sitting on a park
15  bench, or perched atop one of the buildings abutting a street?  Defendant's location is
16  a "relevant factor" that the Court would need to "take into account" when judging
17  whether the interference with a public right is unreasonable.  For all we know from
18  Count 2, Defendant was on the roof of a building in a park and his sign was obstructing
19  motorists' view only of the sky.

20  **No facts establish that the act is not punished elsewhere.**

21  Penal Code 372 exempts acts that fall within the definition of public nuisance in *Penal*
22  *Code 370* but that are punished elsewhere.  For example, standing on a roadway to

1  hichhike is prohibited by *Vehicle Code 21957* so cannot be prosecuted as a criminal
2  public nuisance.  For all we know from Count 2, Defendant was using his sign to hitch
3  a ride.

## No facts establish that the act is not permitted as a matter of right.

6  The subject of pedestrian position and movement is arguably regulated exclusively by
7  the Vehicle Code, which "fully occupies" its regulatory field, which includes traffic
8  control.

## Penal Code 372's reach is limited to Penal Code 370's reach.

10  ""It is also competent for the Legislature... **to declare any act criminal** and
11  make the repetition or continuance thereof a **public nuisance** ... or to vest in
12  courts of equity the power to abate them by injunction; but it is not the province
13  of the courts to **ordain such jurisdiction for themselves.**"" *(Lim (1941)[18])*

14  "Anything which... unlawfully obstructs the free passage or use, in the customary
15  manner, of any...street... is a public nuisance."  *(Penal Code 370)*

16  "Every person who maintains or commits any public nuisance, the punishment
17  for which is not otherwise prescribed, or who willfully omits to perform any legal
18  duty relating to the removal of a public nuisance, is guilty of a misdemeanor."
19  *(Penal Code 372)*

20  Penal Code 372 does not reach common law nuisances.  Even though Lim dealt with a
21  civil action, the Lim court quoted with approval the rule that it is the Legislature, not the

18*People v. Lim, 18 Cal. 2d 872 - Cal: Supreme Court 1941.*

1  Courts, that declare what acts are criminal.  Obstructing the view of drivers does not,

2  without more, imply obstruction of those drivers' free passage or use, in the customary

3  manner, of the street.  Facts must be stated that, if true, establish the latter.


4  **A significant variety of verbal challenges to officers is protected.**


5  "Indeed, "[t]he freedom of individuals verbally to oppose or challenge police
6  action without thereby risking arrest is one of the principal characteristics by
7  which we distinguish a free nation from a police state."" *(Quiroga (1993))*


8  Signed electronically:  */s/ Wo Of Ideafarm*

9  **(Signature authenticated by email; retain copy as proof.)**

# Authorities

Busch (1976)............................................................................................3, 5
Carroll (1905)..........................................................................................1, 5
CCP 128.7 (a)..............................................................................................5
Citizens (2010).........................................................................................3, 5
Citizens United v. Federal Election Com'n, 130 S. Ct. 876 - Supreme Court 2010........3
City of Lakewood v. Plain Dealer Publishing Co., 486 US 750 - Supreme Court 1988...3
Code of Civil Procedure 128.7 (a).....................................................................4
Code of Civil Procedure 128.7 (b)..................................................................4, 5
Daar (1967).............................................................................................1, 5
Daar v. Yellow Cab Co., 433 P. 2d 732 - Cal: Supreme Court 1967.................................1
England (1964)..............................................................................................4
England v. Louisiana Bd. of Medical Examiners, 375 US 411 - Supreme Court 1964....4
First Amendment...........................................................................................3
Forsyth (1992)..........................................................................................3, 5
Forsyth County v. Nationalist Movement, 505 US 123 - Supreme Court 1992..............3
Gallo (1997)............................................................................................5, 6
Hood (1969)................................................................................................5
In re Lane, 58 Cal. 2d 99 - Cal: Supreme Court 1962............................................3
Lakewood (1988).......................................................................................3, 5
Lane (1962).............................................................................................3, 5
Lim (1941)..............................................................................................4, 8
McDonald (2006)...........................................................................................6
Murphy (2011)..........................................................................................3, 5
Pain (1968).............................................................................................5, 6
Pain v. Municipal Court, 268 Cal. App. 2d 151 - Cal: Court of Appeal 1968...................6
PC 1004 (4)...............................................................................................5
PC 1019...................................................................................................5
PC 148..................................................................................................2, 5
PC 370....................................................................................................5
PC 372..................................................................................................2, 5
PC 647c...................................................................................................2
PC 7 (1)..................................................................................................5
PC 7 (4)..................................................................................................5
Penal Code 1004 (4)...................................................................................1, 2
Penal Code 1005...........................................................................................1
Penal Code 1447.......................................................................................4, 5
Penal Code 20.............................................................................................5
Penal Code 370.......................................................................................7, 8
Penal Code 372.......................................................................................7, 8

Penal Code 647(c)...................................................................................................4
Penal Code 647c....................................................................................................4
People ex rel. Busch v. Projection Room Theater, 550 P. 2d 600 - Cal: Supreme Court
1976.........................................................................................................................4
People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090 - Cal: Supreme Court 1997.................6
People v. Carroll, 1 Cal.App. 2, 81 P. 680 (1905)..........................................................1
People v. Hood, 462 P. 2d 370 - Cal: Supreme Court 1969...........................................5
People v. Lim, 18 Cal. 2d 872 - Cal: Supreme Court 1941........................................4, 8
People v. McDonald, 40 Cal. Rptr. 3d 422 - Cal: Court of Appeal, 1st Appellate Dist.,
2nd Div. 2006.........................................................................................................6
People v. Murphy, 253 P. 3d 1216 - Cal: Supreme Court 2011.....................................3
People v. Quiroga, 16 Cal. App. 4th 961 - Cal: Court of Appeal, 1st Appellate Dist., 1st
Div. 1993................................................................................................................5
People v. Terrill, 127 Cal. 99, 59 Pac. 836 – Cal: Supreme Court 1899.........................1
Pipoly (1942).......................................................................................................3, 5
Pipoly v. Benson, 20 Cal. 2d 366 - Cal: Supreme Court 1942.......................................3
Quiroga (1993)........................................................................................................9
Quiroga (1993)14.....................................................................................................5
Rules of the Road Division.........................................................................................3
Terrill (1899).......................................................................................................1, 5
VC 21950................................................................................................................5
VC 525....................................................................................................................5
Vehicle Code.......................................................................................................2, 3
Vehicle Code 21957.............................................................................................5, 8

*EXHIBIT #2*

1   Wo Of Ideafarm
2   211 Hope Street, #276
3   Mountain View, CA 94042
4   phone: none
5   email: ideafarmcity@gmail.com

6   Defendant, represented by
7   Babach (Bobby) Lau, SBN #257955



8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9   People                                                                    B1582698
10                      Plaintiff

                                                          Demurrer to Complaint Filed
11  v.                                                         November 30, 2015

12  Ideafarm, Wo Of                                   February 2, 2018 @ 1:30 PM
13                      Defendant                 Hon. Jerome S. Nadler, Dept. 84

14  **Filing Authority: *Penal Code 1005.*        Primary Authority: *Penal Code 1004 (4).***

15  Defendant respectfully demurs specially on the ground that the complaint is not

16  properly signed and hence not properly certified to be warranted by law, supported by

17  evidence, and filed for a proper purpose.


18  Defendant demurs generally on the grounds that (1) its statement of facts is uncertain,

19  and (2) the facts stated would not, without more, constitute a public offense.


20  Leave to amend should be denied because the facts stated establish that the police

21  officer(s) detained one Gunnufson with neither probable cause nor reasonable

22  articulated suspicion, in violation of *42 U.S.C. 1983*, and that the complaint arises only

23  from Defendant allegedly interfering with that civil rights crime.

## Points

A demurrer does not admit contentions, deductions, or conclusions of fact or law........3
The complaint must be stricken because it is not properly certified.................................3
The complaint is insufficient because its statements of fact are uncertain....................4
   It is uncertain whether, and which, police report is incorporated.................................4
   It is uncertain which statements of fact are "material and issuable"..........................4
   Uncertainty as to which alleged facts would be put at issue violates due process.....5
   It is uncertain how factual contradictions are to be resolved.....................................6
Count 1's statements of fact, if true, do not constitute a public offense........................7
   Count 1's statement of fact is contradicted by statements of fact in the police report.7
   No facts are stated that would constitute interference.................................................8
   No facts are stated that would establish willfulness...................................................9
   Defendant merely spoke to someone detained without probable cause...................11
CONCLUSION: Speaking to one unlawfully detained is not per se a public offense....11

## Authorities

42 U.S.C. 1983........................................................................................................1
Code of Civil Procedure 128.7 (a)..............................................................................3
Code of Civil Procedure 128.7 (b)..............................................................................3
Colantuono (1994)...................................................................................................10
Count 1 paragraph....................................................................................................7
Daar (1967)..............................................................................................................3
Daar v. Yellow Cab Co., 433 P. 2d 732 - Cal: Supreme Court 1967............................3
Lim (1941)................................................................................................................4
Penal Code 1004 (4).................................................................................................1
Penal Code 1005.......................................................................................................1
Penal Code 1019.......................................................................................................4
Penal Code 7 (1).....................................................................................................10
People v. Colantuono, 865 P. 2d 704 - Cal: Supreme Court 1994..............................10
People v. Lim, 18 Cal. 2d 872 - Cal: Supreme Court 1941...........................................4
Vehicle Code 21650.1...............................................................................................7

1   **A demurrer does not admit contentions, deductions, or**
2       **conclusions of fact or law.**

3       "A demurrer admits all material and issuable facts properly pleaded. [refs]
4       However, it does not admit contentions, deductions or conclusions of fact or law
5       alleged therein." *(Daar (1967)[1])*

6   **The complaint must be stricken because it is not properly**
7       **certified.**

8       "Every pleading... shall be signed by at least one **attorney of record** in the
9       attorney's **individual name**...   Each paper shall state the signer's **address** and
10      **telephone number**, if any. ...   **An unsigned paper shall be stricken...**" *(Code*
11      *of Civil Procedure 128.7 (a))*

12  The complaint is signed, but the signature is illegible.  Below the signature, there is an

13  illegible handwritten name that might begin with "C. C..."  To the left of that appears the

14  incomplete name "Miramontes", crossed out.  Below that appears the incomplete name

15  "Solomon".  Below that appears the incomplete name "Williams".  Thus there are four

16  incomplete names, none of which fully identify anyone and none of which are indicated

17  as the attorney of record.  No address or telephone number is stated.

18  The Court must strike this complaint because it is not properly certified to be warranted

19  by law, supported by evidence, and filed for a proper purpose. *(Code of Civil*

20  *Procedure 128.7 (b))*

---

1  *Daar v. Yellow Cab Co., 433 P. 2d 732 - Cal: Supreme Court 1967.*

# The complaint is insufficient because its statements of fact are uncertain.

"A special demurrer for uncertainty... is directed at the uncertainty existing in the allegations actually made. " *(Lim (1941)[2])*

## *It is uncertain whether, and which, police report is incorporated.*

The complaint states, "Further, attached and incorporated by reference are official reports and documents of a law enforcement agency...".  No such papers are attached to the complaint, and the complaint does not refer to any such documents, much less refer to them unambiguously by stating each document's name and revision identifier (date printed).  So, arguably, no documents are incorporated.  Provisionally, Defendant will presume incorporation of the six page police report identified as "Case 15006876, printed 11/5/2015 at 09:08", including its own attachments, but asserts a demurrer for uncertainty to test this presumption.

## *It is uncertain which statements of fact are "material and issuable".*

"The plea of not guilty puts in issue every material allegation of the accusatory pleading,..." *(Penal Code 1019)*

The police report contains many statements of fact that are immaterial to the charged public offense.  This has the effect of obscuring, from the Defendant, from the public, and from reviewing courts, which statements of fact are admitted to be true for the

2  *People v. Lim, 18 Cal. 2d 872 - Cal: Supreme Court 1941.*

1   purpose of testing sufficiency and which statements of fact would be put at issue by a
2   "Not Guilty" plea.


3   The police report mixes statements of fact with contentions, deductions, and
4   conclusions of law and of fact.  When the latter are eliminated, it is uncertain whether
5   the offending act was Defendant (a) being too close, (b) speaking to Gunnufson, and/or
6   (c) the particular content of Defendant's speech to Gunnufson (which is nowhere
7   stated).


8   The presence of many contentions, deductions, and conclusions of fact or law mixed in
9   with statements of fact, and the incorporation by reference of a police report and its
10  attachments, which brings in many immaterial statements of fact, imposes an
11  unreasonable burden upon Defendant, the public, the Court, and reviewing courts, all
12  of which must search the haystack for the needles.


13  ***Uncertainty as to which alleged facts would be put at issue violates due***
14  ***process.***

15  As discussed above, the incorporation by reference of a police report and its
16  attachments makes it unreasonably difficult, if not impossible, to determine exactly
17  which statements of fact would be put at issue by a plea of "Not Guilty".  The Court
18  would exceed its jurisdiction if it conducted a trial to determine even just one of the
19  many immaterial facts, contentions, deductions, and conclusions of law or of fact stated
20  in the police report and its attachments.  Proceeding thus in excess of jurisdiction
21  would violate due process.

1  ***It is uncertain how factual contradictions are to be resolved.***

2  The police report states facts that are contradictory.

3  **Excerpts from police report:**  I told [Defendant] to walk away several times and that
4  **he could stand further away.  I told [Defendant] he was to [sic] close and I could**
5  **not watch both of them and that he was distracting me.**  He ignored my orders to
6  walk away and walked a little closer.  [Defendant] was now within 10 feet of me, which
7  placed me between Gunnufson and [Defendant].  I again told [Defendant] to leave.
8  [Defendant **ignored me and walked to a position where he and Gunnufson were in**
9  **my line of sight** and continued to **talk to Gunnufson**, which was now within in 15
10 feet."

11 **Contradiction #1**:  Did the alleged interference arise from Defendant speaking to
12 Gunnufson or from Defendant being too close?  Several statements suggest the
13 former, but this ground is contradicted by the statement that the officer told Defendant
14 that he could stand further away.

15 **Contradiction #2**:  The police report states that at one time Defendant was within 10
16 feet of the officer, with the officer between Defendant and Gunnufson.  At that time, the
17 report states that Defendant twice ignored "orders to walk away and walked a little
18 closer".  Yet in the next two sentences the report states that Defendant responded by
19 adding more distance (now 15 feet) and by repositioning himself so that the officer
20 could see them both along a single line of sight.  That statement establishes that
21 Defendant did in fact respond to the officer's complaint that the officer "could not watch

1  both of them and that [Defendant] was distracting me", contradicting the statements

2  that Defendant ignored the officer's orders.

3  ## Count 1's statements of fact, if true, do not constitute a public

4  ## offense.

5  ### *Count 1's statement of fact is contradicted by statements of fact in the*

6  ### *police report.*

7  "[Defendant] did willfully resist, delay and obstruct a(n) peace officer in the

8  discharge and attempt to discharge a duty of his/her office and employment[.]"

9  *(Count 1 paragraph)*

10  **Excerpts from police report:** "While conducting a traffic investigation,... [Defendant]

11  interfered several times..." "... [Detainee Gunnufson was cited for CVC 21650.1[.]" "...

12  I saw [Gunnufson] riding a... **bicycle** eastbound on the north side **sidewalk**. As a

13  bicyclist, Gunnufson is required to follow the rules of the road **thus being in violation**

14  **of CVC 21650.1 when he was riding against traffic** (eastbound in the westbound

15  direction). ... I turned into the Chili's parking lot... I now saw Gunnufson riding

16  northbound on the west **sidewalk** of Showers Dr. against southbound traffic."

17  "A bicycle operated on a **roadway**, or the **shoulder of a highway**, shall be

18  operated in the same direction as vehicles are required to be driven upon the

19  roadway." *(Vehicle Code 21650.1)*

1  The law cited by the officer has no application to a bicyclist on a sidewalk.  The officer

2  had no lawful duty to perform and had no probable cause to detain Gunnufson.  Since

3  the officer had no lawful duty to perform, Defendant could not have interfered with the

4  performance of such a duty.  The police report directly contradicts the statement of fact

5  in Count 1.


6  ***No facts are stated that would constitute interference.***


7  The following paragraph contains every possibly material statement of fact in the police

8  report.


9  **Excerpts from police report:**  "While conducting a traffic investigation,... [Defendant]

10  interfered several times which... made me concerned for my safety,..." "... Gunnufson

11  was cited for CVC 21650.1[.]" "... I saw [Gunnufson] riding a... bicycle eastbound on

12  the north side sidewalk. As a bicyclist, Gunnufson is required to follow the rules of the

13  road thus being in violation of CVC 21650.1 when he was riding against traffic

14  (eastbound in the westbound direction). ... I turned into the Chili's parking lot... I now

15  saw Gunnufson riding northbound on the west side walk of Showers Dr. against

16  southbound traffic." "[Defendant] was close by and interfered with my investigation of

17  Gunnufson." "I was attempting to explain to Gunnufson why I had detained him, when

18  [Defendant] approached and **began talking to Gunnufson..... [Defendant] was**

19  **trying to offer Gunnufson advice.** At this point [Defendant] had stopped

20  approximately 20 feet away and continued to talk to Gunnufson after I told him not to

21  interfere.  Based on my knowledge of [Defendant] and Gunnufson's lack of cooperation

22  and fidgety movements, I was concerned for my safety.  I told [Defendant] to walk away

23  several times and that he could stand further away.  I told [Defendant] he was to close

1  and I could not watch both of them and that he was distracting me.  He ignored my
2  orders to walk away and walked a little closer.  [Defendant] was now within 10 feet of
3  me, which placed me between Gunnufson and [Defendant].  I again told [Defendant] to
4  leave.  [Defendant ignored me and **walked to a position where he and Gunnufson**
5  **were in my line of sight** and continued to **talk to Gunnufson**, which was now within
6  in 15 feet.  These seemed to incite Gunnufson because he became slightly more
7  argumentative.  I told [Defendant] to stop and that he was interfering.  He again ignored
8  me and continued to **talk to Gunnufson**.  I told [Defendant] to leave as he was
9  interfering and distracting my attention away from Gunnufson.  When I told [Defendant]
10 he was subject to arrest, he walked away.  Several minutes later, [Defendant] again
11 began to interfere.  He approached after I told him not to and began **talking to**
12 **Gunnufson and continued to try give Gunnufson advise**.  [Defendant] walked to
13 the position **where I could see both him and Gunnufson**, which was within 15 feet.
14 After several times of telling [Defendant] to leave he finally did."


15 The police report only alleges that Defendant talked to the detainee, trying to advise
16 him.  What Defendant allegedly said is nowhere stated.  Nothing in the police report is
17 inconsistent with the theory that the detainee was already uncooperative and that
18 Defendant was advising him to cooperate.  Similarly, nothing in the police report is
19 inconsistent with the theory that whatever Defendant was saying to Gunnufson was
20 speech protected by the First Amendment.  To be sufficient, such a complaint would
21 need to state what Defendant was saying to Gunnufson and how those statements
22 delayed or obstructed the officer in his performance of a lawful duty.


23 ***No facts are stated that would establish willfulness.***

1    "The word "willfully[]"... implies simply a purpose or willingness to commit the
2    act... It does not require any intent to violate law, or to injure another, or to
3    acquire any advantage." *(Penal Code 7 (1))*

4    "We conclude that the criminal intent which is required for assault with a deadly
5    weapon ... is the general intent to **wilfully commit an act the direct, natural**
6    **and probable consequences of which** if successfully completed would be the
7    injury to another." *(Colantuono (1994)[3])*

8    The police report states facts that imply that Defendant willfully spoke to detainee

9    Gunnufson and that Defendant willfully positioned himself at various distances.  The

10   facts stated establish that Defendant <u>did not</u> willfully place himself in a position that

11   was too close or would prevent the officer from watching both of them.  (When the

12   officer notified Defendant that he could not watch both of them, Defendant repositioned

13   himself farther away and within the officer's line of sight as the officer watched

14   Gunnufson.)

15   As discussed above, it is not clear whether the interference arose from Defendant (a)

16   being too close, (b) speaking, and/or (c) the content of that speech.  For each of those

17   theories, no facts are stated that establish willful interference.  Being ten feet from an

18   officer and his detainee, without more, does not have "the direct, natural and probable

19   consequence" of resisting, delaying, or obstructing an officer.  Neither does speaking to

20   a detainee, without more.  One can imagine particular utterances that might satisfy this

21   test, such as, "Grab the officer's gun while I distract him."  Such an utterance might well

22   imply willfulness to resist, delay, or obstruct.  But no such utterances are alleged.

---

3  *People v. Colantuono, 865 P. 2d 704 – Cal: Supreme Court 1994.*

1   *Defendant merely spoke to someone detained without probable cause.*

2   Taking all facts in Count 1 and in the police report as true, Defendant spoke to

3   Gunnufson several times as Gunnufson was being detained without probable cause

4   and without reasonable articulable suspicion.  No other material facts are stated.

5   **CONCLUSION:  Speaking to one unlawfully detained is not per se**
6       **a public offense.**

7   For the reasons discussed above, the complaint fails to allege facts sufficient to, if true,

8   constitute a public offense.  But those facts do establish that the police officer was

9   violating detainee Gunnufson's civil rights.

10  Signed electronically:  /s/ Wo Of Ideafarm

11  **(Signature authenticated by email; retain copy as proof.)**

EXHIBIT #3

1  Wo Of Ideafarm
2  211 Hope Street # 276
3  Mountain View, CA 9042
4  phone:  none
5  fax:      none
6  email:  ideafarmcity@gmail.com

7  Defendant

8          SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

| 9  People | B1579697 , B1579789 |
|----------|---------------------|
| 10         Plaintiff | B1689743 , B1689750 |
|  | B1582698 |
| 11  v. |  |
|  | Statement of Disqualification |
| 12  Ideafarm, Wo Of |  |
| 13         Defendant | Hon. Jerome S. Nadler, Dept. 84 |
|  | June 1, 2018 @ 9 AM |

**Filing Authority:** *Code of Civil Procedure 170.3 (c)(1), Due Process Clause*

14  I the undersigned respectfully object to this hearing and to any further proceedings in

15  the above cases before Hon. Judge Jerome S. Nadler on the grounds that (1) "a

16  person aware of the facts **might reasonably entertain a doubt** that [Judge Nadler]

17  would be able to be impartial"[1] (**appearance of bias**), and that (2) the following facts

18  establish beyond reasonable doubt that Judge Nadler is in fact biased against

19  Defendant's interests (**actual bias**).

20  I discovered the facts stated herein on May 25, 2018 unless stated otherwise.

1  *Code of Civil Procedure 170.1 (a)(6)(A)(iii).*

1    I declare under penalty of perjury under the laws of the State of California that:

2    1. The above listed cases comprise ten misdemeanor counts.

3    2. None of the counts state facts that, if true, would constitute a public offense.  For
4        example, one count states only that Defendant was "walking through traffic".

5    3. A demurrer was filed challenging sufficiency for each and every count, citing
6        "black letter" dispositive law.  No genuine issues of law were before the Court.

7    4. Judge Nadler ruled that every count states facts that if true would constitute a
8        public offense, contrary to law, argument, and common sense.

9    5. Judge Nadler so ruled after refusing to hear oral argument.

10   6. Judge Nadler refused to explain these ten rulings other than to state summarily
11       that the demurrer is meritless.

12   7. On belief, Judge Nadler _cannot_ explain any of these ten rulings and _cannot_
13       explain why the points urged in the demurrer are all meritless.

1    I further declare under penalty of perjury that:

2     1. Judge Nadler ruled that the demurrer is also void because it was signed by
3         Defendant; this ruling is contrary to law and argument.  *(Penal Code 1005)*

4     2. Two demurrers covering the ten counts, both signed by Defendant, were timely
5         filed in Department 84 in the presence of defense counsel and Judge Nadler.

6    I further declare under penalty of perjury that:

7     1. At a prior hearing, Judge Nadler began to announce a decision on Defendant's
8         demurrers, though the demurrers were not on calendar that day, Defendant's
9         reply had not yet been filed, and oral argument had not yet occurred.

10    2. This was tantamount to an admission by Judge Nadler that he had willfully
11        prejudged the ten issues of sufficiency.  The demurrer and the People's
12        response had been filed.  Judge Nadler might reasonably have decided to
13        sustain every count of the demurrer, since the People were not entitled to further
14        argument.  But at that point in time Judge Nadler could not have reasonably
15        formed a decision adverse to Defendant, who had not yet completed argument.

1    I further declare under penalty of perjury that:

2    1. Judge Nadler ordered Defendant to not speak to anyone in the District Attorney's
3       Office on any subject pertaining to the above listed cases.

4    2. Judge Nadler refused to vacate this gag order, on written motion to vacate,
5       timely filed with points and authorities.

6    3. This refusal is contrary to both argument and dispositive black letter law.

7    4. The gag order is undeniably in excess of jurisdiction; there is no genuine issue of
8       law.

9    5. On belief, Judge Nadler <u>cannot</u> explain his refusal to follow dispositive black
10      letter law.

1  I further declare under penalty of perjury that:

2  1.  On belief, a person aware of the above facts might reasonably entertain a doubt
3      that Judge Nadler would be able to be impartial.

4  2.  On belief, the above facts establish beyond reasonable doubt that Judge Nadler
5      is in fact prejudiced against Defendant's interests.  To err is human.  But the
6      above pattern of errors, with an admission, establish actual bias as well as that
7      Judge Nadler is willfully and maliciously refusing to follow the law.

8  3.  This statement of disqualification is not based upon any expression by Judge
9      Nadler of "a view on a legal or factual issue presented in the proceeding".  This
10     proceeding has not presented any genuine legal or factual issues.  The
11     disqualification is established by a pattern of judicial error, including
12     unconstitutional judicial acts, and an admission of actual prejudice.

13 4.  On belief, Judge Nadler cannot articulate a single genuine issue of law or fact
14     presented by any of the complaints or of Defendant's demurrers thereto.

Signed,


Wo Of Ideafarm
Defendant


B1579697 B1579789 ...   05/29/18        People v. Idefarm, Wo O.               Page 5 of 5
                                     Statement of Disqualification

EXHIBIT #4                                                        1

```
 1              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   IN AND FOR THE COUNTY OF SANTA CLARA

 3                   BEFORE THE JEROME S NADLER, JUDGE

 4                          DEPARTMENT NO. 84

 5                              --o0o--

 6

 7   THE PEOPLE OF THE STATE OF        )
     CALIFORNIA,                       )
 8                                     )
              Plaintiff                )
 9                                     )
              VS.                      )   CASE NO. B1579697
10                                     )             B1579789
     WO OF IDEAFARM,                   )             B1582698
11                                     )             B1689743
              Defendant.               )             B1689750
12   _____)

13

14              REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    HELD ON MARCH 23, 2017

16

17

18

19

20   A P P E A R A N C E S:

21   FOR THE PEOPLE:              GRACE KOUBA
                                  DEPUTY DISTRICT ATTORNEY
22

23   FOR THE DEFENDANT:           BOBBY LAU
                                  ATTORNEY AT LAW
24

25   COURT REPORTER PRO TEM:      WENDY C. WACHHORST
                                  LICENSE NO. 12290
26

27

28
```

1    Palo Alto, California                        March 23, 2018

2

3                            PROCEEDINGS

4              THE COURT:  All right.  Let's go to the Ideafarm

5    matters.  They are -- hold on --

6              MR. LAU:  Good morning, Bobby Lau on behalf of Mr.

7    Ideafarm, lines 7 to 15.  He is present out of custody.

8              MS. KOUBA:  And Grace Kouba for the People in these

9    matters.  May we approach, Your Honor?

10             THE DEFENDANT:  Your Honor, before you do that, I'd

11   like to do a Marsden objection and put something on the

12   record?  And --

13             THE COURT:  Just a minute.

14             Counsel, can you approach.

15             (Discussion off the record)

16             THE COURT:  Back on the record on the Ideafarm

17   matter.  All right.  We've had some discussions on the bench

18   with regard to the issue of whether defense should be given

19   additional time to file a response to the prosecutor's

20   response to the demurrer.  And after that discussion, I'm

21   willing to agree to a continuance for that purpose.  So,

22   Counsel, can we have that response filed by sometime in May?

23             MR. LAU:  Yes.

24             THE COURT:  May -- pick up Friday May other than

25   the -- 18th.

26             THE DEFENDANT:  Your Honor, I need to withdraw my

27   objection.

28             THE COURT:  Thank you.  All right.  Thank you very

1   much.

2           So do we want to do the 25th of May?

3           MS. KOUBA:  Set for a hearing date, Your Honor?

4           THE COURT:  Well, that would be for the hearing.  So

5   it would need to be filed at some point before then.  It gives

6   the People, if they so wish, to file a response to the

7   response.  So do we want to file it by let's say the 16th of

8   May?  And then a hearing on the 25th?  Is that okay?

9           MR. LAU:  So that will be the 25th of May --

10          THE COURT:  Right.  At 9:00 o'clock for the

11  demurrer.

12          Is that okay with you, Mr. Ideafarm?

13          MR. LAU:  He's checking his schedule right now.

14          MS. KOUBA:  For the record, your Honor, I would just

15  note that the People do object to this 1050 since there has

16  been actually quite ample time to file a reply given that we

17  continued this case an extra week so that Mr. Lau could be

18  present.

19          THE COURT:  All right.  Over the People's objection.

20          MS. KOUBA:  Thank you.

21          MR. LAU:  Your Honor, the deadline is?

22          THE COURT:  May 16.

23          MR. LAU:  And the hearing date?

24          THE COURT:  And the hearing date is May 25th at

25  9:00 o'clock.

26          THE DEFENDANT:  That's fine, Your Honor.

27          THE COURT:  All right.  Great.  So let's do that.

28          So further, Counsel, did you have some concerns

1    about communications from Mr. Ideafarm directly to you?

2         MR. GOUBA:  Yes, I did, Your Honor.  I've received

3    numerous, numerous e-mails from Mr. Ideafarm since being

4    appointed to this case -- or assigned to this case -- about a

5    month ago.  I requested through his attorney that he not

6    contact me, as he is represented.  He responded to his

7    attorney's direction not to contact me by saying he would not

8    listen to his attorney and would continue to contact me.  And

9    he has repeatedly.  I am requesting an order that he not

10   contact me directly and not e-mail me.

11        THE DEFENDANT:  Your Honor --

12        THE COURT:  Hold on.

13        Mr. Ideafarm, it puts the DA in a very awkward

14   situation because she is obligated ethically not to talk to

15   you when you are represented, not to communicate with you when

16   you're represented.  So any time you send her any type of

17   communication it puts her in that ethical dilemma.  So --

18        THE DEFENDANT:  I would like to respond before you

19   make an order, Your Honor.

20        THE COURT:  All right.  Go ahead.

21        THE DEFENDANT:  These communications are protected

22   by the First Amendment.  They're also explicitly provided for

23   by the Rules of Professional Conduct.  The rule that the

24   People are citing actually applies only if defense counsel

25   objects.  Defense counsel is authorized to allow these

26   communications to occur.  He has not objected.  And even if he

27   did object, because the People are a party to this case, the

28   rule explicitly says that it is not intended to be an obstacle

1     to party-to-party communication on these matters.  So by --
2     both the First Amendment and the ethical rule explicitly
3     provide for this as a right.
4              THE COURT:  All right.  I don't agree with you on
5     that, sir.  So I'm going to order that you not communicate
6     directly with the DA in this case or the DA's office in
7     general with regard to issues arising from this case or these
8     cases.  Do you understand that?
9              THE DEFENDANT:  Yes, Your Honor.  I understand it to
10    be a total ban on my communication with any person within the
11    district attorney's office.
12             THE COURT:  With regard to this -- these cases, yes.
13             THE DEFENDANT:  On these matters.
14             THE COURT:  Yes.  On the cases before us.
15             THE DEFENDANT:  My position is that that's
16    unconstitutional, Your Honor.
17             THE COURT:  All right.  I understand that, sir.
18             All right.  So we'll see you back here in May.
19    Thank you very much.
20             MS. KOUBA:  Thank you -- oh, and one last thing,
21    Your Honor.  We do have an amendment.  Would you like us to
22    wait until we are hearing the demurrers?
23             THE COURT:  Yes.
24             MS. KOUBA:  Yes.
25             THE COURT:  All right.  Thank you.
26             (Whereupon, proceedings were concluded)
27
28

```
 1   STATE OF CALIFORNIA     )
                             )  SS.
 2   COUNTY OF SANTA CLARA   )

 3

 4             I, WENDY C. WACHHORST, CSR, RPR, HEREBY CERTIFY:

 5   That I was the duly appointed, qualified shorthand

 6   reporter of said court in the above-entitled action taken

 7   on the above-entitled date; that I reported the same in

 8   machine shorthand and thereafter had the same transcribed

 9   through computer-aided transcription as herein appears;

10   and that the foregoing typewritten pages contain a true

11   and correct transcript of the proceedings had in said

12   matter at said time and place to the best of my ability.

13             I further certify that I have complied with CCP

14   237(a)(2), in that all personal juror identifying

15   information has been redacted, if applicable.

16             DATED:  April 5, 2018

17

18

19   _____
     Wendy C. Wachhorst, CSR, RPR
     Certificate No. CSR 12290
20

21

22      California Government Code section 69954(d) states:

23         "Any court, party, or person who has purchased a
     transcript may, without paying a further fee to the
24   reporter, reproduce a copy or portion thereof as an
     exhibit pursuant to court order or rule, or for internal
25   use, but shall not otherwise provide or sell a copy or
     copies to any other party or person."
26

27

28
```

WENDY WACHHORST, CSR 12290

EXHIBIT #5

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SANTA CLARA**

**ORDER OF THE COURT**

**DOCKET**: B1579697

1. Defendant Jon Clyde Duringer, AKA Wo Of Ideafarm, shall not contact any person working at the Office of the District Attorney of the County of Santa Clara for so long as he is represented by counsel. This includes any prosecutor assigned to handle his case(s).

2. This order shall not apply to any communication on the defendant's behalf by his attorney.

3. Except as specified in item 2, above, contact of any kind, by any means, directly or indirectly, shall be a violation of this order.

4. The defendant is present in court at the time this order is made; he has been served with the order and the order is effective immediately.

DATED:_____        _____
                                    Hon. Jerome S. Nadler
                                    Judge of the Superior Court